**FILED**
**Apr 04, 2022**
**08:17 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MEMPHIS

| | | |
|---|---|---|
| **KENNETH MERRITT,** | ) | **Docket No. 2020-08-0920** |
| **Employee,** | ) | |
| **v.** | ) | |
| **FLEXTRONICS, INC.,** | ) | **State File No. 49660-2020** |
| **Employer,** | ) | |
| **and** | ) | |
| **TRAVELERS INDEMNITY CO.,** | ) | **Judge Allen Phillips** |
| **Carrier.** | ) | |

## COMPENSATION ORDER DENYING BENEFITS

Mr. Merritt requested permanent disability and medical benefits for injuries to his hands. Flextronics denied his claim. The Court considered the dispute at a Compensation Hearing on March 11, 2022, and for the following reasons, denies Mr. Merritt's request.

### History of Claim

Mr. Merritt worked for Flextronics as a computer repair technician. In Summer 2020, Flextronics had an influx of business that caused Mr. Merritt to work many extra hours. He described working up to twelve hours per day, seven days a week. Mr. Merritt said this increased workload caused pain in his hands from using a screwdriver to remove thousands of screws on the computers he repaired.

Mr. Merritt first noticed the pain on July 6. It worsened the next week and, by the third week, became so bad that he felt he needed medical attention. He said he told his supervisor about his pain; Flextronics contended he did not say it was work-related. Thus, Flextronics did not provide Mr. Merritt with a panel of physicians.

Mr. Merritt ultimately sought his own treatment with orthopedic surgeon Dr. Christian Fahey, whom he first saw on July 28, 2020. Dr. Fahey recorded that Mr. Merritt had pain in his hands for the last six months, but it had gotten severe in the last two weeks. Mr. Merritt related his pain to his work. Dr. Fahey diagnosed possible tenosynovitis and

1

recommended physical therapy.

At that time, Dr. Fahey also responded to a request from Mr. Merritt's short-term disability carrier regarding any work relation of Mr. Merritt's condition. In his deposition, Dr. Fahey described his response as that he did not "find a traumatic injury" and could not say that Mr. Merritt's condition was more than fifty percent caused by his job.

Dr. Fahey took Mr. Merritt off work for two weeks. Mr. Merritt presented the off-work excuse, and Flextronics completed a First Report of Injury and provided a panel of physicians that included Dr. Fahey. Mr. Merritt chose to continue treating with him.

Mr. Merritt returned to Dr. Fahey on August 11, and the doctor noted an odd "sweat pattern" on Mr. Merritt's right hand, leading him to believe Mr. Merritt might have carpal tunnel syndrome. However, Dr. Fahey thought Mr. Merritt's complaints of pain on the back of his hand were inconsistent with that diagnosis. Still, he ordered a nerve test. Dr. Fahey testified that at that time he still believed Mr. Merritt's condition was not work related and he told Mr. Merritt that at the time.

The nerve test revealed findings that Dr. Fahey called "slightly weird," but still "abnormal." He added the test findings were "not bad" and he did not think surgery would help Mr. Merritt. He instead recommended monitoring the situation.

Mr. Merritt disagreed with that recommendation. He believed that Dr. Fahey should have done something other than merely watching his condition. He also believed Dr. Fahey's treatment recommendations constituted medical malpractice, so he sent the doctor a letter advising him of his intent to file a lawsuit.[1] Despite this, he returned to Dr. Fahey on August 27, stating to the doctor that he still wanted to see if he could help.

On August 27, Dr. Fahey again noted Mr. Merritt complained of pain on the back of his hands, but he still believed the complaints were inconsistent with carpal tunnel syndrome. He maintained the best course remained watching the condition which, according to Dr. Fahey, greatly angered Mr. Merritt. He testified that he had to have Mr. Merritt escorted from his office and did not see him again.

After that visit, Dr. Fahey responded "No" when Flextronics asked him if Mr. Merritt's condition was more than fifty percent related to his work. Flextronics then denied Mr. Merritt's claim on grounds of "no medical evidence of injury."

During his deposition, Dr. Fahey testified that his understanding of current Tennessee law is that it is "difficult, if not impossible, to claim repetitive stress injuries,

---

[1] Because of that notice, Dr. Fahey had his own counsel present during his deposition. That counsel and the parties here contacted the Court during the deposition for its ruling on several evidentiary objections having no bearing on the issues in this case.

particularly in your hand." Dr. Fahey also testified his understanding of current law requires that, "you have to have more than 50% likelihood" of a work relation. He said that work relation must stem "from a traumatic injury like a fall to be compensable" and not the result of "a repetitive series of events." Regardless, he maintained on multiple occasions during his deposition that Mr. Merritt's condition was not greater than fifty-percent related to his work at Flextronics.[2]

When Flextronics denied his claim, Mr. Merritt sought treatment on his own from a rheumatologist and two other orthopedic surgeons. He offered their medical records, and Flextronics objected to their admissibility as hearsay. The Court marked the records for identification only and sustained Flextronics's objection.

Mr. Merritt first saw orthopedic surgeon Dr. Michael Hood. He later completed a Standard Form Medical Report for Industrial Injuries (C-32), in which he said, "employment activity," specifically repetitive activity, was more likely than not the cause of Mr. Merritt's carpal tunnel syndrome. He did not give a permanent impairment rating. Mr. Merritt provided that C-32 to Flextronics in 2021, but it did not contain a copy of the doctor's qualifications or any of his medical records.

Mr. Merritt also saw orthopedic surgeon Dr. Rommel Childress, who also completed a C-32 form stating Mr. Merritt's carpal tunnel syndrome was caused by "exposure to repetitive and tedious activities." He described those activities as working on computers twelve-hour days for seven days a week. Dr. Childress said Mr. Merritt's employment was more likely than not the cause of his carpal tunnel syndrome, and that Mr. Merritt had an eight percent permanent partial impairment to the body. Mr. Merritt filed a copy of that C-32 with the Court and served it on Flextronics on February 28, 2022, twelve days before the hearing. The form did not contain Dr. Childress's qualifications or his records.

Mr. Merritt offered both C-32 forms, and Flextronics objected to them on grounds that they did not satisfy the statutory requirements for admission. The Court marked the forms for identification only and addresses their admissibility below. Flextronics also objected to the medical bills from Drs. Hood and Childress that Mr. Merritt offered on hearsay grounds. The Court sustained that objection.

Mr. Merritt testified he did not work from July 28 until October 23, 2020, and he requested temporary disability benefits for that period. He also asked for an award of eight-percent permanent partial disability based on Dr. Childress's opinion in the C-32 and future medical benefits. Mr. Merritt made many arguments regarding Dr. Fahey's causation

---

[2] Dr. Fahey's deposition transcript exceeded 250 pages. The Court has reviewed the entire deposition but confines discussion to the relevant issues regarding causation of Mr. Merritt's injuries. The majority of Mr. Merritt's cross-examination centered on his complaints regarding Dr. Fahey's treatment recommendations and his perception of his attitude.

opinions and the treatment he recommended. Those arguments centered on the alleged fact that Dr. Fahey's attitude toward him changed once Dr. Fahey decided his injuries were not work-related. He maintained he had no hand problems before Summer 2020 and argued against Flextronics's proof as to the nature of his work.

Specifically, Flextronics offered the testimony of a human resources representative who questioned the volume of Mr. Merritt's work in Summer 2020. However, she admitted she did not actively participate in direct supervision of employees and that she has responsibilities over several hundred. Flextronics introduced payroll records that it contended showed Mr. Merritt's hours did not appreciably increase, as he claimed.

Flextronics also offered evidence that Mr. Merritt was the subject of disciplinary actions in 2020 for poor performance, including subpar production at the same time he claimed an increased workload. It also pointed out Mr. Merritt has a pending lawsuit against the short-term disability carrier for failing to pay non-work-related short-term disability benefits for the same time he is claiming temporary total disability.

Finally, Flextronics introduced proof that Mr. Merritt had worked two other computer/electronics repair jobs since leaving its employment and that his current job pays fifty percent more per hour than his pre-injury wage.

**Findings of Fact and Conclusions of Law**

Mr. Merritt represented himself, as is his right. However, the Court cannot excuse him from complying with the same substantive and procedural rules that represented parties are expected to observe. *Lindsey v. Kellogg Co*., 2022 TN Wrk. Comp. App. Bd. LEXIS 6, at *7 (Feb. 17, 2022).

Here, Mr. Merritt must prove all elements of his claim by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2021). To prevail, he must first prove the cause of his injuries by expert medical testimony. *Hart v. Thyssen Krupp Elevator Corp.*, 2020 TN Wrk. Comp. App. Bd. LEXIS 67, at *14 (Nov. 25, 2020). That testimony must show his injuries arose primarily out of his employment, which means, to a reasonable degree of medical certainty, that his work at Flextronics contributed more than fifty percent in causing the injuries. "Shown to a reasonable degree of medical certainty" means that the work was more likely than not the cause. *See* Tenn. Code Ann. § 50-6-102(14)(A)-(D).

Flextronics offered Dr. Fahey's deposition, and Mr. Merritt offered the C-32 forms of Drs. Hood and Childress. Dr. Fahey gave his opinion that repetitive injuries are virtually impossible to prove under the current law. That statement is incorrect; repetitive injuries, like all others, are compensable if they are shown to arise primarily out of the employment. Tenn. Code Ann. § 50-6-102(14). However, regardless of his mistaken belief of the law, Dr. Fahey *did* state on several occasions that Mr. Merritt's condition *was not greater than*

4

*fifty percent* related to his work at Flextronics. He offered that opinion throughout his treatment and stood by it when deposed.

Because Mr. Merritt chose him from a panel, Dr. Fahey's causation opinion is presumed correct subject to rebuttal by a preponderance of the evidence. *See* Tenn. Code Ann. § 50-6-102(E). The Court holds Mr. Merritt did not rebut Dr. Fahey's causation opinion.

Specifically, neither of the C-32 forms submitted by Mr. Merritt complied with the requirements of Tennessee Code Annotated section 50-6-235(c). Specifically, that statute allows a party to introduce direct testimony from a physician through a written medical report *if* it bears the original signature of the physician and contains the physician's qualifications in either the body of the report or in a supporting affidavit. *Id.* at (c)(1). Further, the party seeking to use a report must provide notice of its intent to use it not less than twenty days before the intended use. *Id.* at (c)(2).

In *Watson v. Catlett Constr.,* 2018 TN Wrk. Comp. App. Bd. LEXIS 19, at *6-7 (May 18, 2018), the Appeals Board affirmed the trial court's exclusion of C-32 forms because they were not originals and were not accompanied by the required physician qualifications. Likewise, in *Meier v. Lowe's Home Ctrs.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 68, at *9 (Nov. 2, 2017), the Board held that "substantial compliance" with section 235 is not enough; the C-32 forms must fully comply with the statutory requirements.

Here, Mr. Merritt timely provided Flextronics with Dr. Hood's C-32, but it contained no statement of the doctor's qualifications. Further, the Court cannot ascertain if it is the original.

As to Dr. Childress's C-32, Mr. Merritt served it on Flextronics on February 28, fewer than twenty days before the Compensation Hearing, and it does not contain Dr. Childress's qualifications. Thus, both C-32 forms filed by Mr. Merritt are inadmissible as evidence.

Finally, though Mr. Merritt provided his medical records to Flextronics, and filed them with the Court, the records standing alone are hearsay and inadmissible.

The Court finds Mr. Merritt credible. However, because he offered no admissible medical proof that his injury arose out of his employment, the Court cannot award him the requested benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. The Court dismisses the case with prejudice to its refiling.

5

2. Flextronics shall pay $150.00 to the Court Clerk within five business days after this order becomes final under Tennessee Compilation Rules and Regulations 0800-02-21-.06 (February, 2022).

3. Flextronics shall prepare and submit to the Court Clerk a Statistical Data Form (SD2) within ten business days of this order becoming final.

4. Unless appealed, this order shall become final thirty days after issuance.

**ENTERED April 4, 2022.**

*Allen Phillips*
_____
**JUDGE ALLEN PHILLIPS**
**Court of Workers' Compensation Claims**

**Appendix**

Exhibits
1. First Report of Work Injury
2. Deposition of Dr. Christian Fahey
3. Notice of Denial (Form C-23)
4. C-32 of Dr. Rommel Childress-Identification Only
5. C-32 of Dr. Michael Hood-Identification Only
6. Photograph of Mr. Merritt's hand
7. Choice of Physician Form (C-42)
8. Transcript of Mr. Merritt's recording of a conversation with Dr. Fahey-Identification Only
9. Medical bills and receipts-Identification Only
10. Medical Records of Dr. Childress-Identification Only
11. Medical Records of Dr. Hood-Identification Only
12. Civil Warrant filed by Mr. Merritt against Hartford Ins. Co.
13. Mr. Merritt's resume
14. Mr. Merritt's payroll records at Flextronics—2020
15. Records of Short-Term Disability payments from Hartford
16. Flextronics Coaching Forms regarding Mr. Merritt

Technical Record
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Employer/Carrier's Objection to Dr. Hood's Form C-32
4. Request for Expedited Hearing

6

5. Protective Order Under Rule 26
6. Status Hearing Order
7. Employee Request Acceptance of Dr. Hood's Form C-32 Carpal Tunnel Syndrome Has Been Verified as Evidence
8. Notice of Special Appearance
9. Motion for Protective Order
10. Notice of Objection to Motion for Protective Order
11. Motion to Quash Employee's Written Discovery
12. Response to Motion to Quash Employee's Written Discovery
13. Order Quashing Discovery Under Tennessee Rules of Civil Procedure 26.03
14. Employee's Motion to Compel Discovery
15. Employer/Carrier's Response to Employee's Motion to Compel Discovery
16. Order Denying Motion to Compel Discovery
17. Motion for Discovery
18. Response to Employee's Motion for Discovery
19. Motion to Compel for 2nd Discovery
20. Employer/Carrier's Response to Employee's Motion to Compel for 2nd Discovery
21. Order Denying Second Motion to Compel Discovery
22. Motion for Scheduling Order
23. Scheduling Order
24. Motion in Limine
25. Employer/Carrier's Motion to Continue Compensation Hearing
26. Employee Motion Disputing a Continuance of Scheduling Order
27. Order Granting Motion to Amend Scheduling Order and Amended Scheduling Order
28. Response in Opposition to Plaintiff's Motion in Limine
29. Order Denying Motion in Limine
30. Memorandum of Law in Support of Employee's Motion for Summary Judgment
31. Response in Opposition to Memorandum of Law in Support of Employee's Motion for summary Judgment and/or Employee's Motion for Summary Judgment
32. Post-discovery Dispute Certification Notice
33. Employer/Carrier's Pre-Compensation Hearing Statement
34. Employee's Pre-Compensation Hearing Statement
35. Order of Continuance
36. Order Denying Motion for Summary Judgment
37. Employer/Carrier's Pre-Trial Brief
38. Employer's Exhibit List
39. Employer's Witness List
40. Employee's Pre-Trial Brief
41. Employer/Carrier's Objection to Dr. Childress' Form C-32
42. Employer/Carrier's Objection to Dr. Hood's Form C-32
43. Employee Response to Objection to Dr. Childress' Form C-32
44. Employee Response to Objection to Dr. Hood's Form C-32

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on April 4, 2022.

| Name | Email | Service sent to: |
|---|---|---|
| Kenneth Merritt, Employee | X | ken-merritt@msn.com |
| Paul Nicks, Employer's Attorney | X | Pnicks@travelers.com Jschmid6@travelers.com |

*Penny Shrum*

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**



<u>Compensation Hearing Order Right to Appeal</u>:

If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fullycompleted Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board. *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.** *See* **Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____ **Employer**

Notice is given that _____ *[List name(s) of all appealing party(ies). Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date filestamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____ issued

by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

**Appellee(s)** (Opposing Party): _____  ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
__ *[Signature of appellant or attorney for appellant]*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____   2. Address: _____

3. Telephone Number: _____   4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning _____ |
| SSI | $ _____ per month | beginning _____ |
| Retirement | $ _____ per month | beginning _____ |
| Disability | $ _____ per month | beginning _____ |
| Unemployment | $ _____ per month | beginning _____ |
| Worker's Comp. | $ _____ per month | beginning _____ |
| Other | $ _____ per month | beginning _____ |

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental  $ _____ per month

Groceries       $ _____ per month    Telephone       $ _____ per month

Electricity     $ _____ per month    School Supplies $ _____ per month

Water           $ _____ per month    Clothing        $ _____ per month

Gas             $ _____ per month    Child Care      $ _____ per month

Transportation  $ _____ per month    Child Support   $ _____ per month

Car             $ _____ per month

Other           $ _____ per month (describe: _____ )

10. Assets:

Automobile              $ _____    (FMV) _____

Checking/Savings Acct. $ _____

House                   $ _____    (FMV) _____

Other                   $ _____    Describe: _____

11. My debts are:

Amount Owed                    To Whom

_____                _____

_____                _____

_____                _____

_____                _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT


Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.


_____

NOTARY PUBLIC

My Commission Expires:_____

LB-1108 (REV 11/15)                                         RDA 11082